UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **THOMAS PURNELL THREATT,** | 2:20-CV-10623 |
| Petitioner, | |
| vs. | **OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS*** |
| **NOAH NAGY,** | |
| Respondent. | |

Thomas Purnell Threatt, ("Petitioner"), confined at the Cotton Correctional Facility in Jackson, Michigan, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his conviction for delivering under 50 grams of cocaine, possessing with intent to deliver less than 50 grams of cocaine, and possessing with intent to deliver less than 50 grams of heroin, all contrary to Mich. Comp. Laws § 333.7401(2)(a)(iv), and being a repeat drug offender, contrary to Mich. Comp. Laws § 333.7413(2).

For the reasons that follow, the petition for writ of habeas corpus is DENIED.

## I.   Background

Petitioner was convicted following a jury trial in the Monroe County Court. This Court recites verbatim the relevant facts regarding petitioner's conviction from the Michigan Court of Appeals' opinion affirming his conviction, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> In May 2016, Andrew Funk was facing unrelated felony charges. He offered information to law enforcement about a house on Bacon Street in Monroe County where he had previously purchased crack cocaine, and he agreed to participate in a controlled buy at that location in exchange for the dismissal of the charges against him. Funk called Threatt's phone number, a male answered, and Funk arranged to purchase drugs. The police searched Funk for narcotics and money, outfitted him with a wire, gave him three pre-recorded $20 bills to purchase the drugs, and allowed him to drive (under surveillance) to the house on Bacon Street. When Funk arrived, he went inside an enclosed porch and made contact with Threatt's "girlfriend or someone." He stated that the woman told him to wait for Threatt. Funk testified that after about ten minutes, Threatt arrived. Funk gave Threatt money, and Threatt gave him crack cocaine.
> Based on the controlled buy, the police obtained a search warrant for the house. Threatt was present during the search, and a police detective retrieved $1,111 in cash from him,

including the three pre-recorded $20 bill that Funk had used in the controlled buy. The police also discovered a plastic bag on top of the refrigerator containing 0.5 grams of crack cocaine and 0.6056 grams of heroin. The heroin was individually packaged in 15 "bindles" with torn pieces of Keno lottery slips, which detectives testified is a usual manner in which heroin is packaged for sale. The crack cocaine was in a "corner portion" of a plastic bag and in a quantity a detective testified was consistent with delivery, not personal use. Additionally, officers found a digital scale, materials typically used for packaging narcotics, an envelope containing a letter to Threatt at a different address, and a letter addressed to Rashell Clark with handwritten "ledger communication" on the back, listing dollar figures associated with multiple names, two of which a detective recognized as the street names of narcotics dealers. Finally, the police also found a wallet containing Threatt's driver's license near the other items.

When questioned, Threatt denied any knowledge of or involvement with the narcotics found in the house or that he sold crack cocaine or heroin. When asked about whether Clark was selling narcotics out of the house, Threatt stated that "he didn't know what she was doing." Clark, however, testified that Threatt brought crack cocaine and heroin into her house on Bacon Street for the purpose of selling the drugs, that Threatt sold drugs from her house, and Threatt sometimes directed her to sell drugs from the house if he was not present or to take the drugs somewhere outside of the house to sell. She further testified that Threatt kept the money from the drug sales, which he usually kept with him, but she admitted that "sometimes" she kept the money for her own use. According to Clark, the drug selling activity happened "pretty much every day," and there were days when "multiple" people bought drugs at her house. Clark testified that, while she knew that the crack cocaine and heroin found during the search was in her house, the drugs belonged to Threatt.

*People v. Threatt*, No. 337429, 2018 WL 3943259, at * 1 (Mich. Ct.

App. Aug. 16, 2018); *lv. den.* 503 Mich. 1000, 924 N.W.2d 558 (2019).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. There was insufficient evidence to support the jury's verdict that Mr. Threatt was the person possessing the narcotics found in Ms. Clark's house.

II. The verdicts were against the great weight of the evidence.

III. Mr. Threatt was denied due process when the trial court did not give, and his attorney did not request, accomplice jury instructions.

IV. Mr. Threatt's sentence is not proportionate and not reasonable.

## II.   Standard of Review

28 U.S.C. § 2254(d) provides that:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his or her claim "was so lacking in justification that there was an error well

understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*, 562 U.S. at 103.

## III. Analysis

### A. The sufficiency of evidence claim.

Petitioner contends that there was insufficient evidence to support his conviction.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). A court need not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*. at 318-19 (internal citation and footnote omitted) (emphasis in the original).

6

A federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim merely because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 565 U.S. 1, 2 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under [the] AEDPA." *Id.*

Petitioner contends that there was insufficient evidence to establish that he possessed the cocaine and heroin recovered from Ms. Clark's house. The Michigan Court of Appeals disagreed:

> Threatt contends that he did not have the right to exercise control over the narcotics. In support, he notes that the home

7

where the drugs were located was leased to Clark, he was not listed as an occupant on the lease, and he did not have a key to the house. Additionally, Threatt contends that although items belonging to him were in the house, his mail had a different address listed. Nevertheless, Clark's testimony established that he had a right to be at the house and was, in fact, frequently an occupant. Further, she testified that the drugs and drug paraphernalia located in the house belonged to Threatt, and she explained that he brought the drugs into her house so that he could sell them. Clark stated that Threatt sold cocaine and heroin from her house and kept the proceeds from the sales on his person. She also recounted that Threatt would sometimes direct her to give drugs to buyers in exchange for money when he was not at the house or would sometimes direct her to make sales at other locations. In addition, Funk's testimony shows that Threatt sold drugs from the Bacon Street address and kept the proceeds from the sales on his person. The police also searched Threatt's phone and recovered text messages indicative of narcotics trafficking out of the Bacon Street house. Viewing this evidence in the light most favorable to the prosecution, a jury could reasonably infer that Threatt had constructive possession of the cocaine and heroin located in the house.

*People v. Threatt*, 2018 WL 3943259, at * 2.

In order to convict a defendant under Michigan law of possession of a controlled substance, a prosecutor must prove that he or she exercised control or had the right to exercise control over the controlled substance. *See McFarland v. Yukins,* 356 F. 3d 688, 708 (6th Cir. 2004)(citing *People v. Konrad,* 449 Mich. 263; 536 N.W.2d 517 (1995))(additional citations omitted).   Under Michigan law, a defendant need not have actual

physical possession of a controlled substance in order to be guilty of possessing it. *People v. Wolfe,* 440 Mich. 508, 519-20; 441 N.W. 2d 1201 (1992). Possession of a controlled substance may be actual or constructive. *Id.* "Constructive possession exists when the totality of the circumstances indicates a sufficient nexus between the defendant and the contraband." *Id.* at 521. Constructive possession of a controlled substance can be proven by circumstantial evidence. *See McGhee,* 268 Mich. App. at 623; *See also U.S. v. Gibbs,* 182 F. 3d 408, 424 (6th Cir. 1999).

In the present case, there was ample evidence for a rational trier of fact to conclude that petitioner had actual or constructive possession of the narcotics recovered from Ms. Clark's house so as to sustain his conviction.

First, Ms. Clark testified that the cocaine and heroin belonged to petitioner and he had been selling these narcotics out of her house. Mr. Funk also testified that he purchased crack cocaine from petitioner at the home prior to the police executing the search warrant and seizing the cocaine and heroin. At a minimum, Ms. Clark's testimony that petitioner sold cocaine and heroin out of the house and Mr. Funk's testimony that

petitioner sold him crack cocaine from the location would be sufficient to show that petitioner was in constructive possession of the heroin and cocaine recovered from the house. *See Griffin v. Berghuis*, 298 F. Supp. 2d 663, 670–71 (E.D. Mich. 2004). The police recovered $ 1,111.00 dollars from petitioner when he was arrested, including the pre-recorded $20.00 bills that had been issued to Mr. Funk by the police to purchase the crack cocaine from petitioner.  Petitioner's possession of such a large amount of money in close proximity to cocaine and heroin would be further evidence that would establish that he constructively possessed these narcotics. *See U.S. v. Garcia,* 866 F. 2d 147, 152 (6th Cir. 1989). There was evidence that the petitioner had been romantically involved with Ms. Clark, who resided at this address, and petitioner acknowledged that several items belonging to him, including a wallet with his driver's license, were recovered from the home.  This evidence also established a link between petitioner and the narcotics recovered from the house.  *See Anderson v. Trombley,* 451 Fed. App'x 469, 475 (6th Cir. 2011).

Finally, even if this Court was not convinced that the evidence in this case was sufficient, the Court cannot conclude that it was objectively unreasonable for the Michigan Court of Appeals to determine that a

rational trier of fact could find that constructive possession of the cocaine and heroin had been established beyond a reasonable doubt based upon the evidence introduced at trial. *Anderson,* 451 Fed. App'x at 475. Petitioner is not entitled to habeas relief on his first claim.

## B. The great weight of the evidence claim.

Petitioner argues that he is entitled to habeas relief because the guilty verdict went against the great weight of the evidence.

A federal habeas court has no power to grant habeas relief on the ground that a state conviction is against the great weight of the evidence. *See Cukaj v. Warren,* 305 F. Supp. 2d 789, 796 (E.D. Mich. 2004); *Dell v. Straub,* 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002); *See also Nash v. Eberlin*, 258 F. App'x 761, 764, n. 4 (6th Cir. 2007) ("a manifest-weight-of-the-evidence argument is a state-law argument"); *Artis v. Collins,* 14 F. App'x 387 (6th Cir. 2001)(declining to grant certificate of appealability to habeas petitioner on claim that jury's verdict was against the manifest weight of the evidence).  A claim that a verdict went against the great weight of the evidence is not of constitutional dimension, for habeas corpus purposes, unless the record is so devoid of evidentiary support that a due process issue is raised. *Cukaj,* 305 F. Supp. 2d at 796; *See also*

*Crenshaw v. Renico*, 261 F. Supp. 2d 826, 834 (E.D. Mich. 2003).  The test for habeas relief is not whether the verdict was against the great weight of the evidence, but whether there was any evidence to support it. *Dell,* 194 F. Supp. 2d at 648.  As long as there is sufficient evidence to convict petitioner of this crime, the fact that the verdict may have gone against the great weight of the evidence would not entitle him to habeas relief. *Id.*  Petitioner is not entitled to relief on his second claim.

## C. The jury instruction/ineffective assistance of counsel claim.

Petitioner in his third claim alleges that his due process rights were violated because the judge did not give the jurors a jury instruction concerning the problems with the testimony of an accomplice, in this case, Ms. Clark.  Alternatively, petitioner argues that trial counsel was ineffective for failing to request such an instruction.

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state court conviction is even greater than the showing required in a direct appeal.  The question in such a collateral proceeding is whether the ailing instruction so infected the entire trial that the resulting conviction violates due process, not merely whether the

12

instruction is undesirable, erroneous, or even "universally condemned," and an omission or incomplete instruction is less likely to be prejudicial than a misstatement of the law. *Henderson v. Kibbee*, 431 U.S. 145, 154-55 (1977).  The challenged instruction must not be judged in isolation, but must be considered in the context of the entire jury charge. *Cupp v. Naughton*, 414 U.S. 141 (1973).

To prevail on his related ineffective assistance of counsel claim, petitioner must show that the state court's conclusion regarding this claim was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).  *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687.

The Michigan Court of Appeals rejected petitioner's instructional error and ineffective assistance of counsel claim in pertinent part:

> Based on the record before us, it would have been appropriate for the trial court to instruct the jury to view Clark's testimony as testimony from an accomplice. However, because Threatt did not request a cautionary instruction on the use of accomplice witness testimony, the trial court was not required to give such instruction. Moreover, reversal based on the

13

failure to give an accomplice jury instruction is not required where the accomplice's potential credibility problems have been plainly presented to the jury by other means, such as through cross-examination of the alleged accomplice. Threatt's lawyer thoroughly cross-examined Clark with regard to her potential ulterior motives for testifying against Threatt. Further, in both his opening statement and closing argument, Threatt's lawyer stressed that, given the favorable deal she received in exchange for her testimony, Clark had a significant incentive to testify against Threatt. Additionally, although the trial court did not give the accomplice jury instructions, the jury was instructed on how to evaluate witness credibility. Notably, the jury was instructed to consider whether the witness had a bias, prejudice, or personal interest in the case, whether there had been any promises that affected how a witness testified, and whether the witness had any reason to lie. Finally, the trial court instructed the jury that it could consider that Clark made an agreement with the prosecutor in exchange for testimony as it related to her credibility and as it may tend to show her bias or self-interest. Accordingly, even without the accomplice jury instructions, the jury was aware of Clark's potential credibility issues, self-interest, and bias in testifying against Threatt.

Furthermore, the prosecution presented evidence of Threatt's guilt beyond Clark's testimony, including testimony from Funk that he purchased cocaine from Threatt at the Bacon Street house and that testimony was corroborated by police surveillance, a search of Threatt's cell phone, and a search of Threatt's person. There was also ample evidence indicating that the drugs seized from the Bacon Street house were for sale, not personal use, and, based on the cell phone evidence, the jury could infer that Threatt was selling drugs. Thus, on the record before us, Threatt cannot demonstrate that the trial court's failure to provide a cautionary accomplice instruction amounted to plain error affecting his substantial rights.

Moreover, assuming arguendo that Threatt's lawyer's assistance "fell below an objective standard of reasonableness" when he did not request the accomplice instruction, Threatt cannot show that "but for" that "deficient performance, a different result would have been reasonably probable." As indicated above, based on the opening statements, cross-examination of Clark, and closing argument by Threatt's lawyer, the jury was aware of Clark's credibility issues. Further, based on the jury instructions actually given, the jury knew to evaluate her testimony more carefully based on her personal interest in the case, the promises made to her, and her possible reasons to lie. More significantly, Clark's testimony was corroborated by Funk's testimony, evidence from Threatt's cell phone, and evidence seized during the search of the Bacon Street house. Consequently, Threatt has not demonstrated a reasonable probability that, but for his lawyer's failure to request a cautionary instruction on the use of accomplice witness testimony, he would have been acquitted.

*People v. Threatt*, 2018 WL 3943259, at * 4 (internal citations omitted).

The Sixth Circuit has held, even on direct appeals from federal criminal trials, that a trial court's failure to give a special cautionary instruction on accomplice testimony is not reversible error, so long as the court has given the jury a general instruction on witness credibility and the various considerations that it should take into account in weighing the testimony of various witnesses. *See United States v. Carr*, 5 F. 3d 986, 992 (6th Cir. 1993); *see also United States v. Bucheit,* 134 F. App'x 842,

859 (6th Cir. 2005)(failure to give accomplice instruction not reversible error); *United States v. Allgood*, 45 F. App'x 407, 412 (6th Cir. 2002)("While it is the preferred practice to give a cautionary instruction regarding the possible unreliability of accomplice testimony, we have not held that such an instruction is required for a jury to be 'properly cautioned.'"); *Scott v. Mitchell,* 209 F. 3d 854, 883 (6th Cir. 2000)("We have since followed *Carr* in not requiring accomplice instructions as a general matter").

Federal habeas review of jury instruction claims arising out of a state court prosecution is even more deferential than direct review by a federal appellate court of a federal criminal conviction. In this case, the state trial court's failure to specifically instruct the jury regarding the credibility of accomplice witnesses did not violate petitioner's right to due process, in light of the fact that the general instructions on witness credibility alerted the jury to the various considerations that it should take into account in weighing testimony, giving the jury an ample basis for rejecting the testimony of Ms. Clark if it had chosen to do so. (ECF No. 7-8, PageID. 403-05). *See Latimer v. Burt,* 98 F. App'x 427, 432-33 (6th Cir. 2004). The judge also instructed the jurors that they could

consider the fact that Ms. Clark, as well as Mr. Funk, had been offered plea bargains to testify against petitioner in assessing their credibility and any possible bias on the part of either witness. (ECF No. 7-8, PageID. 411-12).  In light of the evidence presented at trial, the jury had sufficient evidence to assess Ms. Clark's credibility and her possible motivations for lying.  Therefore, the trial court's failure to instruct the jury more specifically on the testimony of accomplices did not deprive petitioner of a fair trial or due process of law. *See Grant v. Rivers,* 920 F. Supp. 769, 784 (E.D. Mich. 1996).

Petitioner also claims that counsel was ineffective for failing to request a cautionary instruction on accomplice witnesses.

In *Krist v Foltz*, 804 F. 2d 944, 947 (6th Cir. 1986), the Sixth Circuit regarded a criminal defense attorney's failure to request an accomplice instruction as being "insignificant," where the witness's "unsavory past and his motive for naming the defendant as his companion in crime were fully developed by counsel on cross-examination." *See also Goff v. Bagley*, 601 F.3d 445, 469-70 (6th Cir. 2010) (Appellate counsel was not ineffective for failure to raise issue that trial court failed to give specific instruction regarding credibility of testimony by accomplices and

informants, where the court gave an instruction which informed jury regarding credibility and alerted jury to what was properly considered in determining credibility).

In this case, petitioner's defense counsel fully brought out Ms. Clark's involvement in the drug sales, the plea bargain she received for testifying against petitioner, and her obvious motive for accusing petitioner of selling cocaine and heroin out of her house in his opening and closing arguments and in his cross-examination of the various witnesses.   Counsel's failure to request a specific instruction on accomplice testimony thus did not rise to the level of ineffective assistance of counsel and would not entitle petitioner to habeas relief. *Krist,* 804 F. 2d at 947.   Petitioner is not entitled to relief on his third claim.

**D. The proportionate sentencing claim.**

Petitioner lastly contends that his sentence of six to forty years in prison was disproportionate to the offense and the offender.

Petitioner fails to state a claim for federal habeas relief.  The United States Constitution does not require that sentences be proportionate.  In *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991), a plurality of the United

States Supreme Court concluded that the Eighth Amendment does not contain a requirement of strict proportionality between the crime and sentence.  The Eighth Amendment forbids only extreme sentences that are grossly disproportionate to the crime. *Id.* at 1001.  Furthermore, a sentence within the statutory maximum set by statute does not normally constitute cruel and unusual punishment. *Austin v. Jackson,* 213 F. 3d 298, 302 (6th Cir. 2000).

Courts reviewing Eighth Amendment proportionality must remain highly deferential to the legislatures in determining the appropriate punishments for crimes. *United States v. Layne*, 324 F.3d 464, 473-74 (6th Cir. 2003)(citing *Harmelin*, 501 U.S. at 999).  "In implementing this 'narrow proportionality principle,' the Sixth Circuit has recognized that 'only an extreme disparity between crime and sentence offends the Eighth Amendment.'" *Cowherd v. Million*, 260 F. App'x 781, 785 (6th Cir. 2008)(quoting *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000)). As long as the sentence remains within the statutory limits, trial courts have historically been given wide discretion in determining "the type and extent of punishment for convicted defendants." *Williams v. New York*, 337 U.S. 241, 245 (1949).

Moreover, federal courts generally do not engage in a proportionality analysis except where the sentence imposed is death or life imprisonment without parole. *See United States v. Thomas,* 49 F.3d 253, 261 (6th Cir. 1995); *Vliet v. Renico,* 193 F. Supp. 2d 1010, 1015 (E.D. Mich. 2002). Successful challenges to the proportionality of a particular sentence in non-capital cases are "exceedingly rare." *Rummel v. Estelle*, 445 U.S. 263, 272 (1980).

The underlying drug offenses carried a maximum twenty year sentence. See Mich. Comp. Laws § 333.7401(2)(a)(iv). Under the repeat controlled substance offender statute, Mich. Comp. Laws § 333.7401(2)(a)(iv) 333.7413(2), a sentencing court is permitted to double the maximum term for the underlying offense, as well as the recommended minimum sentencing range. *See People v. Williams,* 268 Mich. App. 416; 707 N.W. 2d 624 (2005). Petitioner's sentence of six to forty years in prison was within the statutory limits for the delivery and possession with intent to deliver crimes and being a repeat controlled substance offender. Under these circumstances, petitioner's sentence of six to forty years in prison was not grossly disproportionate. *See Friday v. Straub,* 175 F. Supp. 2d 933, 941 (E.D. Mich. 2001)(sentence of 22 to

20

40 years' imprisonment was not cruel and unusual punishment, in violation of the Eighth Amendment, when the defendant, who was convicted of delivering *less than* 50 grams of cocaine, was sentenced as habitual offender, third offense)(emphasis added); *See also Sanders v. McKee,* 276 F. Supp. 2d 691, 700 (E.D. Mich. 2003)(defendant's sentence to 15 to 40 years' imprisonment for delivering, and conspiring to deliver, *less than* 50 grams of cocaine was not grossly disproportionate, and thus, did not violate the Eighth Amendment's prohibition of cruel and unusual punishment, where his criminal history included a juvenile adjudication for delivery of cocaine and two previous drug convictions as an adult)(emphasis added).  Accordingly, petitioner is not entitled to habeas relief on his fourth claim.

## IV.  Conclusion

The Court will deny the petition for writ of habeas corpus.  The Court will also deny a certificate of appealability to petitioner.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition

should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.

The Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. However, although jurists of reason would not debate this Court's resolution of petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and petitioner may proceed *in forma pauperis* on appeal. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 765 (E.D. Mich. 2002).

## V. ORDER

Based upon the foregoing, **IT IS ORDERED** that the Petition for a Writ of Habeas Corpus is **DENIED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a Certificate of Appealability is **DENIED**.

22

**IT IS FURTHER ORDERED** that Petitioner is **GRANTED** leave to appeal *in forma pauperis*.

**IT IS SO ORDERED.**

Dated: August 17, 2022    s/Terrence G. Berg
_____
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE